UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JESSIE R. JONES                                              PLAINTIFF

VS.                                          CIVIL ACTION NO. 3:04CV554LS

BELLSOUTH, CHRISTOPHER LOTT,
ALAN FLOWERS AND MIKE LYNCHARD                              DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court on motion of defendants Bellsouth Telecommunications, Inc. (Bellsouth), Alan Flowers, Michael Lynchard and Christopher Lott for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Jessie R. Jones has responded in opposition.[1] Having considered the memoranda and submissions of the parties, the court concludes that defendants' motion should be granted.

On July 20, 2004, Jessie R. Jones filed this suit against his former employer, Bellsouth, and several of its employees[2] pursuant to Title VII, 42 U.S.C. § 2000e et. seq. and 42 U.S.C. § 1981, alleging that he was subjected to unlawful employment

---

[1] Plaintiff's response consists of a two page denial of each of defendants' grounds for summary judgment, without elaboration. Accordingly, the court has relied on his complaint, his charges of discrimination, and the excerpts of his deposition testimony attached to defendants' motion for summary judgment to discern his position.

[2] Defendants correctly point out that plaintiff's racial discrimination claims pursuant to Title VII, 42 U.S.C. § 2000e et. seq., against Christopher Lott, Alan Flowers and Mike Lynchard, in their individual capacities, should be dismissed as a matter of law, because it is well settled that "individual defendants cannot be held liable for damages under Title VII," Huckabay v. Moore, 142 F. 3d 233, 241 (5th Cir. 1998).

discrimination, including wrongful termination, constructive discharge, harassment and retaliation, based on his race (African-American) and religion (Seventh Day Adventist). He contends the alleged harassment was so severe as to create a hostile work environment. For their part, defendants deny plaintiff's allegations and insist that neither his race nor his religion played a role in any employment decisions, and they have accordingly moved for summary judgment as to all of plaintiff's claims.

The facts which gave rise to this action, as gleaned from plaintiff's charges of discrimination,[3] his complaint[4] and the evidentiary submissions, are as follows. Jones began work with Bellsouth in 1997 as a lineman and held several positions, including service technician, cable splicer helper and electronic technician, until his termination in October 2003 for allegedly engaging in a verbal altercation with a co-worker.

During his employment, Jones was assigned to various Bellsouth offices within the Jackson/Vicksburg area. According to plaintiff, on October 20, 2003, while settling in to his new assignment in Vicksburg, he answered the telephone. The caller

---

[3] Jones filed an initial charge of discrimination with the Equal Employment Opportunity Commission on October 22, 2003 and filed an amended charge on November 11, 2003, in which he added that he had been discharged from employment.

[4] Both plaintiff's complaint and his response to defendants' Rule 12(e) motion for a more definite statement have been considered by the court.

2

did not identify herself and asked "Who is this?" Plaintiff, concluding that the caller wanted him to figure out who she was, replied, in a joking manner, "Keep talking and maybe I can identify who you are." The female caller eventually asked for James Abernathy, plaintiff's co-worker, and Jones handed the phone to him. After completing the call, Abernathy told Jones that he should not answer the phone if he could not answer it correctly; plaintiff took offense at the remark and Abernathy's tone, and the two men started arguing. According to Jones, the argument was serious, but he did not touch Abernathy or raise his fists.

Shortly thereafter, plaintiff left the office, and Abernathy reported the incident to Alan Flowers, the Network Manager, who supervised both Abernathy and Jones. In contrast to plaintiff's account of the argument, Abernathy reported that Jones raised his fist and swung at him, that he felt threatened by him, and that he was not comfortable being alone in the office with him. Flowers, in turn, reported the incident to Bellsouth security, and the following day, Michael Lynchard, Manager of Bellsouth security, traveled to Vicksburg and obtained signed statements from Jones, Abernathy, Dave Neumann, a service technician, and Willie Williams, an installation and maintenance supervisor. Neumann confirmed that Jones had made a fist and swung at Abernathy. Williams, who was not present during the incident, explained that Neumann had called him immediately after the confrontation and

told him that Abernathy was concerned that Jones would presumably return to the office and hurt him.

On October 23, 2003, a "Threat Assessment Team" was convened to consider the results of the investigation and determined that a verbal and physical threat had taken place. The matter was then referred to George W. Mainer, Jr., General Manger of Network Operations for Bellsouth's Gulf States, who concluded that Jones' employment should be terminated. Approximately two weeks later, the Communications Workers of America filed a grievance on behalf of plaintiff, claiming that he had been treated unfairly. The grievance was submitted to arbitration, and on July 30, 2004, the arbitrator found that Bellsouth had failed to show that Jones "represented a threat to fellow employees" and "levied excessive punishment . . . when it did not give due consideration to the employee's positive work record of twenty-six years." The arbitrator reinstated Jones' employment with Bellsouth effective August 15, 2004 and awarded him back wages and COBRA premium payments, but on September 10, 2004, Jones informed Bellsouth that he did not intend to return to work. Prior to the issuance of the arbitrator's decision, Jones received a notice of his right-to-sue from the EEOC and filed the instant action.

In his complaint, plaintiff contends that beginning in 2001, he felt racially harassed by Flowers by virtue of the fact that he required him to report to white employees with less experience. Jones alleges that he complained to Flowers about his assignment,

4

and in response, Flowers retaliated by scheduling plaintiff to work during the Memorial Day weekend in 2001, despite his previously approved vacation. In both his complaint and his charge of discrimination with the EEOC, plaintiff insists that Flowers constantly picked on him, called into question his actions on the job, and generally harassed him, which he contends resulted in a hostile work environment. Jones also appears to take the position that Flowers conspired with others to bring about his discharge. With respect to his religious discrimination claim, plaintiff contends that following his complaints to Flowers, he began scheduling plaintiff to work on Saturdays, which conflicted with his religious beliefs, in spite of an earlier promise by Flowers' supervisor, defendant Christopher Lott, that he would not be required to work on Saturdays.

In their motion for summary judgment, defendants first argue that plaintiff's religious discrimination claim is statutorily barred under Title VII, which requires a plaintiff to file an EEOC charge within 180 days of the allegedly discriminatory act. 42 U.S.C. § 2000(e)-5(e)(1). Here, Flowers allegedly scheduled plaintiff to work on one Saturday in 2001, which conflicted with plaintiff's religious beliefs, but plaintiff did not file his charge of discrimination until October 2003. Moreover, plaintiff testified in his deposition that he did not know whether Flowers was aware that he was a Seventh Day Adventist at the time he scheduled him to work; that after he contacted Bellsouth's human

resources department, he was not required to work on Saturdays; he was not disciplined over the matter; and he was not scheduled to work another Saturday during the remainder of his employment with Bellsouth. As such, the court agrees that plaintiff's religious discrimination claim is statutorily barred and should be dismissed.[5]

As for plaintiff's racial harassment claim, defendants argue that this claim must be dismissed because plaintiff cannot prove the required elements of a hostile work environment claim. To establish a prima facie case of racial harassment alleging hostile work environment, Jones must prove that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition or privilege of employment; and (5) Bellsouth knew or should have known of the harassment in question and failed to take prompt remedial action. See Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353 (5th Cir. 2001). "For harassment to affect a 'term, condition, or privilege of employment' it must be 'sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.'" Id. (citation omitted). To

---

[5] Even if plaintiff's claim were not statutorily barred, in the court's opinion, plaintiff's own testimony indicates that Bellsouth fully accommodated his religious beliefs. See Weber v. Roadway Express, Inc., 199 F.3d 270, 273 (5th Cir. 2000)("An employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but is not required to incur undue hardship.").

6

determine whether a work environment is "hostile" or "abusive," the court must consider all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 23, 114 S. Ct. 367, 371 (1993).

In the instant case, plaintiff claims that Flowers harassed him by: 1) having him report to white employees with less experience; 2) scheduling him to work on Saturdays; 3) writing him up for poor job performance; and 4) questioning his performance on the job. As an initial matter, the court notes that plaintiff has not produced any evidence that these instances of alleged harassment were racially motivated. See <u>Daniels v. BASF Corp.</u>, 270 F. Supp. 2d 847, 855 (S.D. Tex. 2003)(citing <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 80, 118 S. Ct. 998, 1002, 140 L. Ed. 2d 201 (1998))("Under Title VII, only harassment motivated by racial animus (or animus toward another protected class) is actionable.")

Nevertheless, defendants maintain that none of these complaints constitute a hostile work environment, and the court agrees. Defendants submit that Jones reported directly to Flowers beginning in 2001, as did approximately ten other electronic technicians, and requiring an employee to report to the manager over his work group does not constitute harassment. As stated

earlier, plaintiff's request to have Saturdays off for religious purposes was addressed by Bellsouth and his desire was accommodated. Finally, writing up an employee for poor performance or closely monitoring an employee's method of carrying out his job responsibilities does not create a hostile work environment. As such, the court is of the opinion that plaintiff has produced insufficient evidence to support his claim of hostile work environment.

Additionally, these allegations relating to Flowers' treatment of plaintiff also form the basis of Jones' constructive discharge claim. Jones acknowledged in his deposition that he could have returned to work at Bellsouth following the arbitrator's decision, but stated that he felt "forced to resign." To survive summary judgment on his constructive discharge claim, Jones must provide evidence that working conditions were "so intolerable that a reasonable employee in [his] position would [have felt] compelled to resign." Webb v. Cardiothoracic Surgery Assoc. of N. Tex., 139 F.3d 532, 539 (5th Cir. 1998). "Mere harassment, alone, is insufficient; rather, the plaintiff must show 'aggravating factors' to justify departure." Hockman v. Westward Communications, LLC, 407 F.3d 317, 331 (5th Cir. 2004). "Ultimately, to succeed on a constructive discharge claim, the plaintiff must show a greater degree of harassment than is required for a hostile work environment claim." Id. at 332. (citing Benningfield v. City of Houston, 157 F.3d 369, 378 (5th

Cir. 1998). Defendants argue that because the instances of alleged harassment of which plaintiff complains do not rise to the level of a hostile work environment, he therefore cannot prove that he was constructively discharged, and the court agrees. Accordingly, summary judgment is in order as to plaintiff's constructive discharge claim.

As for plaintiff's discriminatory discharge claim, defendants argue that he has no evidence to support this claim. In order to establish a claim of discriminatory discharge, the plaintiff must prove that: (1) he is a member of a protected group; (2) he is qualified for the position; (3) he was discharged; and (4) he was replaced by a person outside of the protected group. Wheeler v. BL Development Corp., 415 F.3d 399, 405 (5th Cir. 2005). The defendant may then offer a legitimate, non-discriminatory reason for the termination, at which time the plaintiff "'must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).'" Keelan v. Majesco Software, Inc., 407 F.3d 332, 341 (5th Cir. 2005) (quoting Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004)).

In their motion, defendants contend that Jones cannot make out a prima facie case of discrimination, because he cannot show that he was replaced by someone outside the protected class. In support of this assertion, defendants have presented the declaration of Christopher Lott, who states that Jones was replaced by Lawrence Patterson, who is African-American. Moreover, defendants maintain that Jones was terminated for misconduct pursuant to Bellsouth's Workplace Violence Policy and point out that during the relevant time period, two white employees were terminated for similar misconduct. Plaintiff has not offered any evidence to contradict Lott's declaration or defendants' legitimate, non-discriminatory reason for the decision to terminate his employment, and thus, his discriminatory discharge claim is due to be dismissed.

Finally, Jones' retaliation claim, which he articulated in his charge of discrimination, must also fail. In order to establish a claim for retaliation, plaintiff must establish that: (1) he engaged in a protected activity, (2) he suffered an adverse employment action and (3) a causal nexus existed between the protected activity and the adverse employment action. Green v. Administrators of Tulane Educational Fund, 284 F.3d 642, 657 (5th Cir. 2002). Even assuming that plaintiff can show that he engaged in a protected activity, in that he has alleged that he complained to Flowers about what he perceived to be racial discrimination, he still cannot establish the causal nexus between his complaint and

his termination, approximately two years later.[6]  See id. ("To demonstrate causation, an employee must show that 'but for' the protected activity, the adverse employment action would not have taken place.").  Plaintiff's dismissal arose out of a verbal altercation with Abernathy, and while Abernathy reported the incident to Flowers, Flowers turned over the investigation to Bellsouth security.  Following the investigation, a threat assessment team comprised of five members, including Flowers, concluded that a threat had taken place, and Mainer, who is also African-American, made the decision to terminate plaintiff's employment.  Simply put, the evidence shows that Flowers' participation in Jones' dismissal was minimal, and the ultimate decision was made by Mainer.  Accordingly, summary judgment is warranted as to Jones' claim of retaliation.

Based on the foregoing, defendants' motion for summary judgment is granted.

---

[6] It appears from Jones' charge of discrimination and his complaint that he also links his complaint to Flowers with being scheduled to work on Saturdays.  However, as stated earlier, this religious accommodation was sufficiently addressed by Bellsouth and would not qualify as an adverse employment action.  See Hockman v. Westward Communications, LLC, 407 F.3d 317, 330 (5th Cir. 2004)(quoting Walker v. Thompson, 214 F.3d 615, 629 (5th Cir. 2000))("In determining whether a defendant's action constitutes an adverse employment action, 'we are concerned solely with ultimate employment decisions.'").

11

A separate judgment will be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 14th day of July, 2006.

                                            /s/ Tom S. Lee
                                    UNITED STATES DISTRICT JUDGE